UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD W. BUCKLEY,

   Plaintiff,

v.

CITY OF WESTLAND, et al.,

   Defendants.

Case No. 2:20-cv-11315

HONORABLE STEPHEN J. MURPHY, III

/

**OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' SECOND MOTION TO DISMISS [20]**

  Plaintiff alleged that Defendants violated state and federal law when they worked together to force Plaintiff to take full responsibility for an inmate's death in the Westland jail. ECF 19. Defendants moved to dismiss the complaint, ECF 20, and Plaintiff responded, ECF 22. The Court reviewed the briefing and finds that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f). For the following reasons, the Court will grant in part and deny in part the motion.

## BACKGROUND

  Plaintiff was a sergeant with the Westland Police Department who, at the time in question, worked in the Westland jail. ECF 19, PgID 236, 250. Defendants are the City of Westland and several Westland police officers. *Id.* at 238–40. Plaintiff alleged that "Defendants made the decision to pin the responsibility" of an individual who died in custody on Plaintiff. *Id.* at 256. Plaintiff alleged that after the individual died, Defendants fabricated a story that Plaintiff acted improperly in connection with the

1

death. *Id.* at 258. Plaintiff also claimed that Defendants lied under oath, modified police reports, and presented "false information to the Wayne County Prosecutor[']s Office." *Id.* As a result, the Wayne County Prosecutor charged Defendant with one count of involuntary manslaughter and one count of misconduct in office. *Id.* at 259. But the manslaughter charge was later dismissed for lack of probable cause, and a jury found Plaintiff not guilty of misconduct in office. *Id.* at 266–67. In the interim, however, Plaintiff was terminated from the Westland Police Department. *Id.* at 260. Based on those actions, Plaintiff filed the present complaint.

**LEGAL STANDARD**

When the Court analyzes a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual assertions, and draws every reasonable inference in favor of the non-moving party. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The Court may grant a Rule 12(b)(6) motion to dismiss if the complaint fails to allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true," the Court must dismiss it. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

**DISCUSSION**

The Court will first address the four constitutional claims against the individual Defendants "in their official capacities." *See* ECF 19, PgID 268–76. The Court will then address the conspiracy claims. Finally, the Court will address the state law claims.

I. <u>Constitutional Claims Against Individual Officers</u>

Plaintiff brought constitutional claims against Defendants "in their official capacity[ies]." *See* ECF 19, PgID 268–76.[1] But an official capacity suit is "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978)). Thus, Plaintiff's constitutional claims against Defendants are really claims against Westland. *See Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989) (an official capacity suit is functionally "a suit against a government entity"). But, as discussed below, Plaintiff showed no constitutional violations, so the constitutional claims must fail.

---

[1] Defendants argued that qualified immunity also bars the four constitutional claims. ECF 20, PgID 322–24. But qualified immunity does not protect individuals sued in their official capacities. *See Benison v. Ross*, 765 F.3d 649, 665 (6th Cir. 2014) (Noting that "personal immunity defenses, such as . . . qualified immunity, are not available to government officials defending against suit in their official capacities."). Because Plaintiff brought the four constitutional claims against Defendants only in their "official capacity," *see* ECF 19, PgID 268–76, the qualified immunity defense does not apply.

*A. Fair Trial*

Plaintiff alleged that the individual Defendants[2] violated his due process right to a fair trial by "with[holding] exculpatory evidence" and "fabricat[ing] false reports." ECF 19, PgID 270. Plaintiff's due process claim stems from the individual Defendants' alleged interference with his "right to a fair trial." ECF 22, PgID 412 ("Through fabricated evidence, concealed information, and false reports, Plaintiff's due process right to a fair trial was impeded.").

"[I]t is well established that a person's constitutional rights are violated when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury." *Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006). Here, it is illogical to argue that the information impacted the jury's decision because the complaint clearly states that the manslaughter charge against Plaintiff was dismissed and that a jury found Plaintiff not guilty of misconduct in office. ECF 19, PgID 266–67; *see also Williams v. Lucas*, No. 1:10 CV 615, 2011 WL 4632883, at *10 (N.D. Ohio Sept. 30, 2011) (finding that a fabrication of evidence claim was "without merit" because the charges "flowing from the fabricated evidence were eventually dismissed, inasmuch as [the defendant] was never convicted as a result of the evidence"). The fabrication argument fails because Plaintiff cannot establish that the evidence impacted the outcome of his criminal case.

---

[2] The Court will refer to Defendants Jedrusik, Miller, Thivierge, Blanchard, Starks, Neville, Compton, and Gomez as the "individual Defendants."

4

The suppression argument fails for the same reason. If "the underlying proceeding terminate[s] in [Plaintiff's] favor, he has not been injured by the wrongful suppression of exculpatory evidence. Therefore, [Plaintiff] has failed to state an independent claim based on this act of suppression." *McGune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988). Because the charges against Plaintiff were either dismissed or the jury found him not guilty, no constitutional violation occurred for the fair trial claim.

B. *Malicious Prosecution*

Plaintiff also alleged Defendants Jedrusik, Miller, and Thivierge violated his Fourth and Fourteenth Amendment right to be free of an unreasonable search and seizure when they maliciously prosecuted Plaintiff. ECF 19, PgID 273. Specifically, Plaintiff alleged that "Defendants" made false statements "regarding Plaintiff's alleged culpability." *Id.* at 274. As a result of the false statements, Plaintiff alleged Defendants improperly arrested him and subjected him to judicial proceedings. *Id.* at 273–74.

To succeed on a malicious prosecution claim, Plaintiff must prove four elements: (1) "that a criminal prosecution was initiated against" Plaintiff and Defendant "made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the prosecution"; (3) Plaintiff "suffered a deprivation of liberty . . . apart from the initial seizure" as a result of the proceeding; and (4) "the criminal proceeding must have been resolved in the Plaintiff's favor." *Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017) (cleaned up).

5

Here, Plaintiff failed to adequately allege that Defendants Jedrusik, Miller, and Thivierge "made, influenced, or participated in the decision to prosecute." *Id.* Rather, Plaintiff generically alleged that "Defendants . . . falsely accused Plaintiff of criminal activity" and "made statements to prosecutors with the intent of exerting influence to institute and continue judicial proceedings." ECF 19, PgID 274. But Plaintiff does not specify which Defendants made statements to prosecutors or what the statements were about; he made a blanket "the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

Plaintiff tried to overcome the shortfall by directing the Court to a notice of disciplinary action against Plaintiff that Defendants Jedrusik and Thivierge signed. ECF 22, PgID 415; ECF 19, PgID 257–58. But that notice cannot save the claim. The complaint alleges that the Wayne County Prosecutor decided to charge Plaintiff on October 1, 2018, ECF 19, PgID 259, but the disciplinary action notice was not "issued to [Plaintiff] [until] October 4, 2018," *id.* at 257. Thus, the October 4, 2018 disciplinary action could not have influenced the decision to prosecute because the Wayne County Prosecutor decided to charge Plaintiff before the notice was issued. The prosecutorial misconduct claim therefore fails.

C. *Equal Protection*

Next, Plaintiff alleged that the individual Defendants violated his right to equal protection because they conspired "to subject [him] to arrest, criminal prosecution and termination from employment." *Id.* at 275. The individual

6

Defendants' actions were allegedly "motivated by age and disability animus and constituted purposeful discrimination." *Id.*

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Plaintiff must therefore adequately plead that the government treated him "disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspected class, or has no rational basis." *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (internal quotation omitted). The Court will now address the two equal protection claims—age discrimination and disability discrimination—in turn.

"[A]ge is not a suspect classification under the Equal Protection Clause." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 83 (2000) (collecting cases). Additionally, "[s]tates may discriminate on the basis of age without offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest." *Id.* Thus, "Plaintiff must show that there was no rational basis for the state action that treated [him] differently because of [his] disability." *Bullington v. Bedford Cnty.*, 905 F.3d 467 (6th Cir. 2018).

Here, Plaintiff did not establish that he was treated differently than similarly situated individuals based on his age. Plaintiff did allege that he was "the oldest officer present during" the incident in which the inmate died, that the individual Defendants are considerably younger, and that he was treated differently because of

7

his age. ECF 19, PgID 256, 264. He also alleged that he was not permitted to use a certain restroom because of a previous cancer diagnosis while other officers were permitted to use the restroom. ECF 19, PgID 245. But Plaintiff never alleged that the individual Defendants were "similarly situated." In fact, the complaint makes it clear that they were not similarly situated. Plaintiff was the shift supervisor for the Westland jail on the day of the incident. *Id.* at 250. And he admits that he was the only shift supervisor on duty at the time in question. *Id.* (Plaintiff "was left covering what would typically be a two-man shift on his own."). Because Plaintiff was the only shift supervisor on duty, no similarly situated individuals were involved in the event at issue. And because Plaintiff did not allege that there were other similarly situated individuals who were treated differently, his equal protection claim lacks merit.

    *D. Failure to Intervene*

Finally, Plaintiff alleged that the individual Defendants violated his constitutional rights when they failed to intervene to prevent the spread of false information regarding Plaintiff. ECF 19, PgID 272. To establish a claim for failure to intervene, Plaintiff must prove that the individual Defendants (1) "observed or had reason to know [of the constitutional violation], and (2) [] had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). But the claim necessarily fails here because, as discussed above, there were no constitutional violations. *See Craft v. Billingslea*, 459 F. Supp. 3d 890, 912 (E.D. Mich. 2020) ("[A]s there was no constitutional violation, the other officers present cannot be held on a failure to intervene claim.").

In sum, Plaintiff failed to allege that any constitutional violations occurred. Additionally, Plaintiff appears to bring a *Monell* claim against Westland. *See* ECF 22, PgID 406 (Plaintiff's response brief arguing that the "claims against the individual Defendants in their official capacity state a plausible *Monell* claim." (cleaned up)). *Monell* liability occurs "when execution of a government's policy or custom, whether made by lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [] injury." 436 U.S. at 694. But "[t]here can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citing *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 879 (6th Cir. 2000)). For that reason, without underlying constitutional violations, Plaintiff's *Monell* claim fails.

II.     Conspiracy Under 42 U.S.C. §§ 1983 and 1985(3)

Plaintiff alleged that the individual Defendants conspired to deprive him of his constitutional rights under 42 U.S.C. §§ 1983 and 1985(3). ECF 19, PgID 277–84. The individual Defendants responded that the conspiracy claims should be dismissed under the intracorporate conspiracy doctrine. ECF 20, PgID 334. The intracorporate conspiracy doctrine states that "if 'all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy.'" *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019) (quoting *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839–40 (6th Cir. 1994)). The doctrine applies to both claims under §§ 1983 and 1985(3). *Id.* at 817–19 ("[I]f § 1985 cannot be violated by an alleged

9

conspiracy where the alleged conspirators are all employees of the same entity acting within the scope of their employment, neither can § 1983.").

Plaintiff did not dispute whether to apply the intracorporate conspiracy doctrine but argued that his conspiracy claims should proceed because the "'scope of employment' exception to the intracorporate conspiracy doctrine" applies. ECF 22, PgID 417. The scope of employment exception "recognizes a distinction between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work in the same place." *Johnson*, 40 F.3d at 840. In other words, "when employees act outside the course of their employment, they and their corporation may form a conspiracy." *Id.* at 841.

Here, the acts behind the alleged conspiracy all relate to the individual Defendants' employment with the City of Westland. For the § 1985(3) conspiracy, Plaintiff alleged that certain Defendants each conspired to conceal information regarding the arrest in question, violate an agreement regarding an investigation, fabricate testimony during an internal investigation, prepare a disciplinary action, void the original ticket that resulted in the arrest, and invoke their Fifth Amendment rights when asked about the incident. ECF 19, PgID 278–79. And Plaintiff alleged that Defendants committed nearly identical acts in the § 1983 conspiracy. ECF 19, PgID 281–84. But the acts in question, including disclosing information regarding an arrest, dealing with an investigation agreement, testifying in an internal investigation, disciplining an officer, voiding a ticket, and invoking a constitutional right when asked about the incident, are all acts related to Defendants' employment

as police officers. And, Plaintiff never alleged that the acts were outside the course and scope of Defendants' employment or private acts. *See* ECF 19, PgID 277–84. The intracorporate conspiracy doctrine therefore bars Plaintiff's conspiracy claims.

III. State Law Claims

The Court has, to date, exercised supplemental jurisdiction over the state law claims. ECF 19, PgID 284–300. But a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c). Generally, district courts should decline to exercise supplemental jurisdiction over state law claims when all federal law claims have been dismissed from the case before trial. *See Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008) ("[A] federal court should typically decline to exercise pendent jurisdiction over a plaintiff's state-law claims after dismissing the plaintiff's federal claims.").

The Court will therefore now decline to exercise supplemental jurisdiction over the state law claims. For one, the Court lacks original jurisdiction over the claims. And two, the interests of judicial economy do not override the presumption against retaining the case because the parties have not even begun discovery. *See Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). For those two reasons, the Court will dismiss the state law claims without prejudice. Because the Court is declining to resolve the state law claims on the merits, the Court will deny the motion to dismiss the state law claims.

## CONCLUSION

In sum, the Court will grant the motion to dismiss in part and dismiss claims I–VI. The Court will deny the motion to dismiss as to the remaining state law claims but will decline to exercise supplemental jurisdiction over the claims.

## ORDER

**WHEREFORE,** it is hereby **ORDERED** that Defendants' second motion to dismiss [20] is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that claims I–VI are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the remaining state law claims are **DISMISSED WITHOUT PREJUDICE**.

This is a final order that closes the case.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: June 29, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 29, 2021, by electronic and/or ordinary mail.

s/David P. Parker
Case Manager